**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ISMENIA VELASQUEZ *on behalf of herself*
*and others similarly situated*,

          *Plaintiff*,

  v.

OSANA CLEANING CORP. *et al.*,

          *Defendants*.
-------------------------------------------------------------X

**MEMORANDUM ORDER**
23-cv-04257 (NJC) (JMW)

**A P P E A R A N C E S:**

**Mitchell Schley**
197 Route 18 South
South Tower, Suite 3000
East Brunswick, NJ 08816
*Attorney for Plaintiff*

**Eddie A. Pantiliat**
Hymson Goldstein Pantiliat & Lohr, PLLC
14500 N. Northsight Blvd., Suite 101
Scottsdale, AZ 85260
*Attorney for Defendants Osana Cleaning Corp.,*
*Jean Pierre Espejo, and Vanessa Espejo*

**WICKS,** Magistrate Judge:

  Plaintiff, Ismenia M. Velasquez ("Velasquez"), on behalf of herself and all others similarly situated, brought this class and collective action on June 9, 2023, against Defendants, Osana Cleaning Corp. ("Osana"), Global Commercial Cleaning Services, Inc. ("Global"), Jean Pierre Espejo, an Individual, and Vanessa Espejo, an Individual (collectively "Defendants")[1], for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the New

---

[1] Plaintiff later discontinued without prejudice her claims against Defendant, Global, only on November 6, 2023. (*See* ECF Nos. 17, 18).

York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"). (ECF No. 1.) The latest application before the Court is Defendants' Motion for Protective Order *Restricting Communications with Putative Class Members* (*see* ECF No. 14), with Plaintiff's Response in Opposition (*see* ECF No. 15.) For the reasons below, Defendants' motion is denied in its entirety without prejudice and with leave to renew.

## BACKGROUND

Plaintiff was employed as a cleaner by Defendants, a New York incorporated cleaning business, from about 2014 until October 7, 2022, where she worked in exchange for wages (ECF No. 1.) Throughout the entirety of her employment, Plaintiff alleges she was an employee of Defendants within the meaning of FLSA, 29 U.S.C. §203(e)(1), (g), and the NYLL § 190.2. *Id.* Out of the 364 out of 365 days a year Plaintiff worked, she alleged that she was paid only once a month, was not provided documentation showing her hourly rate or number of hours worked over a seven-day workweek or over any period, was never paid for overtime work, was not provided any vacation days off either paid or unpaid, was only given one holiday per year, Christmas Day, which was not paid, and was not provided health insurance benefits or other benefits. *Id.* Thus, on June 9, 2023, Plaintiff consented to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b) and set forth seven claims against Defendants for alleged violations of the FLSA, NYLL, and the NYLL and WPTA. *Id.* Defendants were served a copy of the Summons and Complaint on June 12, 2023. (ECF Nos. 3, 4, 5.)

Plaintiff brought the First and Second Claims, which include alleged FLSA Unpaid Overtime Wages and Frequency of Payments violations, as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of themselves and those similarly situated. *Id.* Similarly situated employees were defined to include: "[a]ll employees who worked as cleaners for Global

2

and Osana, at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective") but excluding members of supervision and management." *Id.*  Plaintiff brought the Third through Seventh Claims, which include both alleged NYLL Unpaid Overtime Wages, Spread-of-Hours Pay, Failure to Provide Wage Notice, NYLL WPTA Failure to Provide Wage Statements violation, and a NYLL § 191 Frequency of Payments violation, as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class.  *Id.*  The class was defined to include "All persons who worked as cleaners for Global and Osana, for the period beginning six years prior to the filing of this action through the entry of judgment in this action (the "Rule 23 Class") but excluding members of supervision and management." *Id.*

On August 18, 2023, Defendants filed an answer, denying all allegations as it relates to the seven claims.  (ECF No. 8.)  On September 29, 2023, Defendants filed a Letter Motion for Protective Order *Restricting Communications with Putative Class Members* to request: (i) that communications between Plaintiff's attorneys and Defendant's former and current employees be conducted solely in writing; (ii) Defendant's counsel receive copies of those communications; and (iii) that Plaintiff must disclose to Defendants the names of Defendant Osana's former or current employees Plaintiff's counsel contacted regarding this litigation.  (ECF No. 14.)

Defendants filed this motion in response to a voicemail left by Plaintiff's counsel, on September 20, 2023, for a current Osana employee, Odelia Lopez ("Ms. Lopez"):

> Hello, this is the office of Attorney Mitchell Schley. We were calling to ask a few questions regarding a company. We are the employees with the case against Osana and we are helping the employees, so we wanted to ask some confidential questions if you have the time. Please call us back at this number. Hope you have a good day. Bye bye.

3

(*Id.*)[2]

Defendants argue that a protective order is warranted because: (i) this voicemail was an overt act of solicitation, and thus Plaintiff's counsel violated New York Rules of Professional Conduct prohibiting same; (ii) the unsolicited calls harm Defendant's relationship with its employees; and (iii) the proposed order is narrowly tailored, making it "unlikely to interfere with 'any legitimate interest of the Plaintiff or her counsel and will better enable this Court to fulfil its duty of control over this class action and the conduct of counsel.'" *Id.* In addition, Defendants requested that they be awarded attorneys' fees incurred in submitting this letter motion as a sanction against Plaintiff's counsel for violation of ethical rules. *Id.*

On October 6, 2023, Plaintiff's counsel filed his response in opposition, requesting that the motion be denied. (ECF No. 15). Plaintiff's counsel argues that Defendants' motion lacks "any legal or factual support" because Defendants failed to point to specific findings that demonstrate the need for limitation and potential interference with the rights of parties, as required for an order limiting communications between parties and potential class members. *Id.* Plaintiff's counsel contends Defendants' allegation that Plaintiff's counsel violated New York's ethical rules was based on one voicemail that was used to seek information. *Id.* In addition, Plaintiff's counsel argues that Defendants' motion "fails to recognize the type of discovery often required in FLSA cases," because, to establish that the proposed collective and class are "similarly situated for certification and post-certification purposes," Plaintiff's counsel "needs to speak to current and former employees." *Id.* Lastly, Plaintiff's counsel argues Defendants'

---

[2] Defendants claim the call was in Spanish, and Defendants are therefore providing the translated version. (*Id.*) In his Opposition, Plaintiff's counsel states: "[t]he voicemail properly identifies that the call was made by my office in connection with the case . . . [c]onsistent with the intent of the call, it states 'we were calling to ask a few questions regarding a company' and goes on to say, 'we wanted to ask some confidential questions if you have the time.'" (ECF No. 15).

4

contention that the unsolicited calls harm Defendants' relationship with its employees as a reason for requesting a protective order to limit communications between parties and potential class members is not supported by the Second Circuit. *Id.*

## DISCUSSION

### A. Standard on a Rule 26(c) Motion

Parties seeking cover from discovery may avail themselves of a motion for a protective order. Rule 26(c) affords protection for abusive or embarrassing discovery: "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005).

"If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

Here, Defendants seek a protective order placing certain restrictions on Plaintiff's counsel's communications with potential class and/or collective action members–specifically, Defendant Osana's former and current employees. (ECF No. 14.) As explained further, Defendants have not demonstrated good cause warranting the issuance of such an order.

### B. Precertification Communications with Potential Class and Collective Action Members

The standard governing precertification communications with potential collective and class action members is articulated in the Supreme Court's seminal decision *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). In *Gulf Oil*, the parties entered into a conciliation agreement involving alleged discrimination against black and female employees at one of Gulf's refineries. *Id*. at 91. Under this agreement, Gulf was required to offer backpay to alleged victims of discrimination and began to send notices to employees eligible for backpay, stating the amount available in return for execution of a full release of all discrimination claims. *Id*. Respondents subsequently filed a class action against Gulf on behalf of all black present and former employees and rejected applicants for employment, alleging racial discrimination in employment. *Id*. at 92. In response, Gulf filed a motion seeking an order limiting communications from the named plaintiffs (Respondents) and their counsel to class members. *Id*. at 93-95.

The District Court issued an order imposing a complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the court's prior approval (the "Order"). *Id*. at 95. The court made no findings of fact and did not write an opinion explaining its rationale. *Id*. at 96. The Fifth Circuit reversed, holding the Order was an unconstitutional prior restraint on expression protected by the First Amendment. *Id*. at 99. The Supreme Court affirmed the Fifth

6

Circuit's ruling, holding the Order was inconsistent with the "general policies embodied in Federal Rule of Civil Procedure 23, which governs class actions in federal district courts." *Id*.[3] The Court reasoned the Order interfered with Respondents' efforts to inform potential class members of the existence of the lawsuit, and "may have been particularly injurious—not only to Respondents but to the class as a whole—because employees at that time were being pressed to decide whether to accept" Gulf's backpay offers. *Id*. at 101. The Court found the Order "made it more difficult for Respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent." *Id*.

Due to these potential issues, the Court advised that a federal court's order restricting communications with potential class members "should be based on *a clear record and specific findings reflecting a weighing of the need for a limitation and the potential interference with the parties' rights*. . . resulting in a carefully drawn order that limits speech as little as possible." *Id*. at 101-02 (emphasis added). The Court ultimately determined the record disclosed "no grounds on which the District Court could have determined that it was necessary or appropriate to impose the Order[,]" and further noted, "the mere possibility of abuses" in class-action litigation "does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the [Federal] Rules." *Id*. at 103-04.

Therefore, following *Gulf Oil*, a district court may not restrict certain communications with potential class members unless the party seeking the restriction has made a "'specific record

---

[3] Rule 23(d) allows federal courts to make appropriate orders "(3) imposing conditions on the representative parties [of the class] or on intervenors . . . [and] (5) dealing with similar procedural matters" in class actions. *See* F. R. Civ. P. 23(d). In discussing the general policies embodied in Rule 23, the Court stated: "Class actions present opportunities for abuse as well as problems for courts and counsel in the management of cases," and, because of the potential for abuse, a district court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties[,]" however, "this discretion is not unlimited." *Id*. 99–100.

7

showing of particular abuses by which it is threatened[,]'" and the district court finds the "'showing provides a satisfactory basis for relief . . . consistent with the policies of Rule 23.'" *Id.* at 102 (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)). Courts in the Second Circuit have further interpreted *Gulf Oil* to hold that communications with pre-certification potential class members should not be restricted unless the party seeking the restriction demonstrates the communication is "misleading, improper, or otherwise warrants judicial intervention." *Mendez v. Enecon NE. Applied Polymer Sys., Inc.*, No. CV 14-6736 ADS AKT, 2015 WL 4249219, at *2 (E.D.N.Y. July 13, 2015); *Hinterberger v. Cath. Health Sys., Inc.*, No. 08-CV-380S F, 2010 WL 3395672, at *5 (W.D.N.Y. May 13, 2010) (examples of abusive conduct include "providing false, misleading or intimidating information, or other misconduct such as concealing material information or conducting communications with a represented party"); *Zamboni v. Pepe W. 48th St. LLC*, No. 12 CIV. 3157 AJN JCF, 2013 WL 978935, at *3 (S.D.N.Y. Mar. 12, 2013) (noting "courts have a responsibility to restrict communications that are potentially coercive or misleading"); *Johnson v. Equinox Holdings, Inc.*, No. 13 CIV. 6313 RMB JLC, 2014 WL 1677117, at *1 (S.D.N.Y. Apr. 28, 2014) (internal citations omitted) ("[D]istrict courts impose restrictions and sanctions where parties have engaged in serious abuses such as give false, misleading, or intimidating information, concealing material information, or attempting to influence the decision about whether to seek exclusion from a class.").

  This is a particularly difficult standard to meet, as the "Supreme Court, the American Bar Association, and several courts in this Circuit have concluded that both plaintiffs' counsel and defense counsel have legitimate need to reach out to potential plaintiffs in certain situations," including, "obtaining information about the merits of the case or uncovering information that may be relevant to whether or not a class should be certified." *Shibetti v. Z Rest., Diner &*

*Lounge, Inc.*, No. 18-CV-856 (BMC), 2021 WL 1738315, at *7 (E.D.N.Y. May 3, 2021) (internal citations omitted). Indeed, this Court has repeatedly cautioned against "interfere[nce] with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary." *Mendez*, 2015 WL 4249219, at *2.

Here, Defendants have failed to establish that a single voicemail left for a current Osana employee, requesting to speak with her to ask "some confidential questions[,]" is misleading, improper, or otherwise warrants judicial intervention (ECF No. 14.) First, as previously mentioned, Plaintiff's counsel has the right to contact members of the putative class to "obtain information about the merits of the case" or to "uncover information that may be relevant to whether or not a class should be certified." *Shibetti*, 2021 WL 1738315, at *7. Plaintiff's counsel states that the purpose of the call was to obtain "additional insight into any relationship" between Osana, Plaintiff's current employer at the time, and Global, her previous employer, given Plaintiff's conversation with counsel in which Plaintiff told counsel that there was "a connection between" the two companies, and that Plaintiff's co-worker at the time, Ms. Lopez, might be "able to provide additional insight into the relationship between the two companies." (ECF No. 15 at 3.)

Plaintiff's counsel further explains that he was "not interested in requiring a company to unnecessarily have to defend an unwarranted claim[,]" and therefore had his legal assistant reach out to Ms. Lopez and leave her the voicemail. (*Id*.)[4] To this end, the purpose of Plaintiff's counsel's voicemail appears to be to obtain information regarding the merits of the case, a proper

---

[4] Plaintiff's counsel further identifies he was seeking information relevant to the allegations contained in the Complaint, as "Complaint includes allegations that there was either a successor or joint employer relationship between [Osana and Global] within the meaning of the FLSA and NYLL." *Id*. In her Complaint, Plaintiff alleges "Osana Cleaning Corp. is the Successor to Global Commercial Cleaning Services, Inc." (ECF No. 1 at ¶5.)

9

purpose for contact consistent with the principles enunciated in *Gulf Oil*. *See e.g., Mendez.*, 2015 WL 4249219, at *2 (holding plaintiff's counsel's letter to potential collective action members stating they "represented plaintiff and [were] investigating claims related to the NYLL and FLSA by speaking with employees," and asking potential members to reach out if they had "any information regarding any of the violations" was not misleading or improper and did not otherwise warrant judicial intervention).

Second, Defendants have not presented a "clear record and specific findings" of abuse under *Gulf Oil*. Defendants proffer one short, vague voicemail, in which the exact purpose for calling remains unclear at face value. Indeed, in accordance with *Gulf Oil*, Courts in this Circuit have emphasized that "single instance(s) of communication [with pre-certification class members] supported by mixed motive(s) do not warrant court intervention." *Jerry Gradl Motors, Inc. v. ACV Auctions, Inc.*, No. 1:21-CV-00409, 2022 WL 949795, at *7 (W.D.N.Y. Mar. 30, 2022); *Johnson*, 2014 WL 1677117, at *1 (internal citations omitted) ("[J]udicial intervention into pre-certification communications with putative class members is justified only upon a clear record and specific findings of a potential interference with the rights of the parties."); *Hinterberger*, 2010 WL 3395672, at *5 (holding judicially imposed restrictions on communications by class counsel with potential class members must be based on a "clear record" demonstrating "a likelihood of serious abuses").

Third, the Court is not persuaded by Defendants' argument that Plaintiff's counsel's phone call "harms Defendants by disrupting the employer-employee relationship[,]" such that a protective order is necessary. (ECF No. 14 at 4.) Defendants rely only on *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) in support, which is clearly distinguishable from this case, and Defendants do not provide any additional support from the

10

Second Circuit. (*See* ECF No. 14 at 4.) In *Jackson*, the district court entered an order authorizing the plaintiffs in two consolidated race discrimination cases to advertise their allegations to the public at large and to communicate with potential class members, current and former Motel 6 employees, through mass mailings. *Id*. at 1001. On appeal, the Eleventh Circuit held the district court abused its discretion in entering the order because: (i) the "communication authorized by the order [was] widespread and clearly injurious[;]" and (ii) there was a "possibility that plaintiffs might use widespread publication of their claims, disguised as class communications, to coerce defendants into settlement." *Id*. at 1004. Here, Plaintiff's counsel's communication with potential class members is limited to one voicemail and therefore cannot be classified as "widespread." *Id*. Likewise, Defendants have not demonstrated how the voicemail is "clearly injurious" or "coercive." *Id*.

Fourth, Defendants argue that the requested protective order "will allow Defendants and this Court to take any appropriate corrective action should future acts of misleading communications occur." (ECF No. 14.) However, as articulated in *Gulf Oil*, "mere possibility of abuses" do not justify sanctions in the form of a communications ban that could "interfere[ ] with the formation of a class or the prosecution of a class action[.]" *Gulf Oil,* 452 U.S. at 104; *see also Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841, 2015 U.S. Dist. LEXIS 145563 (Oct. 27, 2015) (evidence beyond "the mere possibility of abuses" is required to "justify judicial intervention.").

Defendants' primary argument in support of imposing communication restrictions is that a "[v]iolation of ethical and professional rules governing attorney conduct represent grounds for a court to enter order restricting or limiting direct communication between counsel and potential class members[,]" and Plaintiff's counsel's voicemail "violated [New York] Ethical Rules

11

Prohibiting Solicitation." (ECF No. 14 at 3.) While this Court need not undertake an analysis of whether Plaintiff's counsel's voicemail complies with New York's ethical rules, "since the Court has already ruled that no judicial action is warranted pursuant to *Gulf Oil*," it nevertheless addresses Defendants' arguments in turn. *Mendez*, 2015 WL 4249219, at *3.

### C. Solicitation under New York's Ethical Rules

Defendants correctly identify that an example of potential abuse under *Gulf Oil* warranting a restriction on precertification communications is an attorney's violation of the applicable state's ethical rules. *See Shibetti*, 2021 WL 1738315, at *5 (holding direct solicitation by telephone is not a permissible purpose for contacting potential class members under *Gulf Oil* and issuing a protective order preventing the same); *see also Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-08333 ALC SN, 2014 WL 4852063, at *1 (S.D.N.Y. Sept. 29, 2014) ("A district court may grant the relief sought [by the moving party] under its authority to remedy ethical violations, and, second, under its authority to manage counsel's conduct in class actions"); *Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 97 (W.D.N.Y. 2010) (finding unethical conduct can "justify restricting further use of the contact information beyond that of completing the notice phase" in a collective action).

This Court examines the New York State Rules of Professional Conduct ("NYRPC") to determine the scope of ethical conduct, which bars the solicitation of business in person or by telephone.[5] *See Shibetti*, 2021 WL 1738315, at *5; Local Civil Rule 1.5(b)(5); N.Y. R. Prof. Conduct 7.3(a)(1). The NYRPC defines "solicitation" as "any advertisement initiated by or on

---

[5] Rule 7.3(a)(1) prohibits solicitation "by in-person or telephone contact[,] unless the recipient is a close friend, relative, former client or existing client." Likewise, the ABA's Model Rule 7.3 prohibits in-person and telephone solicitation of potential class members. *See* ABA Formal Op. 07-445 (2007).

12

behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients, or their family members or legal representatives, the primary purpose of which is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain." N.Y. R. Prof. Conduct 7.3(b).

In general, courts interpreting Rule 7.3 have determined communications asking specific individuals to "join the lawsuit" are solicitations. *See Shibetti*, 2021 WL 1738315, at *6 (an attorney's calls to specific individuals asking them to "give [him] a call back" if they had "any interest in joining this lawsuit" was a solicitation); *Maracich v. Spears*, 570 U.S. 48, 55 (2013) (respondents' letters to petitioners asking them to "join the lawsuit" were "solicitation letters"); *Block v. First Blood Assocs.*, 125 F.R.D. 39, 40 (S.D.N.Y. 1989) (plaintiff's counsel's letters informing certain individuals they were being contacted to ascertain their interest in being part of the proposed class, and requesting that they sign and return to plaintiff's counsel a form that was expressing their interest in being part of the proposed class was a "solicitation letter"). As this Court has previously identified in *Shibetti*, "[t]he collective action context does not change the ethical analysis" under Rule 7.3. *Shibetti*, 2021 WL 1738315, at *6 (citing ABA Formal Op. 07-445 (2007) ("The 'fact that an action has been filed as a class action' – or as a collective action – 'does not affect the policies underlying Rule 7.3 that prohibit the types of contact with prospective clients that have serious potential for overreaching and other abuse.'")).

In *Shibetti*, plaintiff's counsel contacted prospective collective action members who were servers at defendant's diner by phone and by letter. *See id*. at *2-3. Specifically, Plaintiff's counsel left one of the servers a voicemail, stating:

> Yes, hi. This message is for [the server]. My name is Jared Blumetti. I'm calling on behalf of waiters and waitresses of the [Parkview Diner]. A few weeks ago I sent you a notice regarding your ability to potentially opt into this lawsuit against the [Parkview Diner]

13

> regarding not being paid certain wages. If you can give me a call back or if you have any interest in joining this lawsuit, my number is [phone number]. Thank you.

*Id*. at *2. Plaintiff's counsel sent the following letter to two other servers:

> We represent Bonnie Shibetti and Katrina Puccini in a lawsuit that they filed against the owners and managers of the Parkview Diner . . . alleging that the Parkview Diner failed to properly compensate them during their employment. You are receiving this letter because you worked at the Parkview Diner at some point between August 2017 and the present and might be entitled to join the lawsuit. For additional information about the lawsuit, including how to join the lawsuit, see the enclosed court-authorized notice and consent to sue form.

*Id*. at *3. Defendant subsequently brought a motion for sanctions against plaintiff's counsel, arguing both the voicemail and the letter were solicitations prohibited by Rule 7.3. *Id*. at *2. Judge Cogan held the voicemail–and *not* the letter–was a solicitation under Rule 7.3. *Id*. at *9. He reasoned the letter was "fairly innocuous[,]" "conveyed the same information as the court-approved notice[,]" was not misleading or coercive[,]" and, notably, "did not ask the recipients to join the lawsuit, in stark contrast to the phone calls." *Id*.

Here, Plaintiff's counsel's voicemail does not constitute solicitation prohibited by New York's ethical rules, because, like the letter in *Shibetti*, it does not explicitly ask Ms. Lopez to join the lawsuit and does not otherwise try to "ascertain [Ms. Lopez's] interest in being part of the proposed class" or offer to represent her. *Block*, 125 F.R.D. at 40; *Jerry Gradl Motors, Inc.*, 2022 WL 949795, at *6 (holding attorney's communications were not solicitation where attorney "sought relevant information regarding the Defendants in this lawsuit and mentioned the potential benefits for those who joined the lawsuit," but "did not directly ask individuals to join the lawsuit or offer to represent them"); *Pagan v. C.I. Lobster Corp.*, 549 F. Supp. 3d 356, 360 (S.D.N.Y. 2021) (holding attorney's phone calls to individuals identifying himself as plaintiff's attorney and asking the individuals to call him back, which were made "for the purpose of gathering information and interviewing witnesses" were not solicitation); *Johnson*, 2014 WL

14

1677117, at *1 (holding plaintiff's counsel's email to Equinox employees was not a solicitation because plaintiff's counsel did not "purport to represent the trainers or present objectively false information" in the email).

Defendant's argument that the "promise of a confidential conversation" makes Plaintiff's counsel's call "primarily for solicitation" is unconvincing. (ECF No. 14 at 3-4.) Defendants argue "Plaintiff's counsel could only make such a promise of confidentiality if it came with an attorney-client relationship[,]" and "ask[ing] to discuss the matter in confidence therefore impl[ies] an offer of representation and the shield of privilege that accompanies that relationship." (*Id*. at 4.) Defendant's arguments are speculative at best–as nowhere in the voicemail did Plaintiff's counsel explicitly make an offer of representation to Ms. Lopez or otherwise promise her that all communications between her and Plaintiff's counsel would remain confidential. *See Johnson*, 2014 WL 1677117, at *2 (finding plaintiff's counsel's email to defendant's employees stating, "your communications seeking consultations or legal advice from our office are protected by the attorney-client privilege, so long as you intend them to remain confidential attorney-client communications" was an "accurate characterization that should any [employee] opt-in to a potential class, [their] communications with plaintiffs' counsel would be subject to ethical obligations governing contact with represented individuals[,]" and was not a solicitation); *Pagan*, 549 F. Supp. 3d at 360 (where the record established that plaintiff's counsel contacted specific individuals and sought to speak with them, and there was "no writing or other evidence that contains any solicitation" by plaintiff's counsel[,]" Defendants' counsel's assertions that it was "clear" plaintiff's counsel's "purpose" in contacting those individuals was to have them "join the lawsuit" were speculative).

Moreover, it remains undisputed that Plaintiff's counsel never actually spoke with Ms. Lopez, and "therefore could not possibly have solicited [her] during any oral conversation." *Id*. As such, because the voicemail in this case stands in stark contrast to voice messages that had sought to have defendants' employees join the pending lawsuit in *Shibetti*, and that the Court declines to accept Defendants' counsel's "speculation of improper conduct" by Plaintiff's counsel, this Court finds Plaintiff's counsel did not violate New York's ethical rules on solicitation of clients.[6] *See Shibetti*, 2021 WL 1738315, at *2; *Gordon*, 737 F. Supp. 2d at 101.

Although the voicemail at issue is not a solicitation, and a protective order "is unwarranted on the current record," Plaintiff's counsel is reminded "the protection of class members from misleading communications from the parties or their counsel is an important interest that courts will vindicate," and warned that "future communications with continued use of suggestive turns of phrase" such as "*confidential questions*" (ECF No. 14), will be "subject to judicial scrutiny," in the event Plaintiff's counsel later attempts "to abuse the type of communication permissible at this pre-certification stage of the case." *Johnson*, 2014 WL 1677117, at *2. Finally, the Court notes that it is not preventing Defendants from communicating with unrepresented prospective class and/or collective action members, so long as those communications comply with New York's ethical rules and *Gulf Oil*.

---

[6] Because there is no clear record of unethical conduct before the Court, an award of attorney's fees is not warranted, and the Court declines to impose such. *See e.g.*, *Jerry Gradl Motors, Inc.*, 2022 WL 949795, at *7.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for a protective order (ECF No. 14) is DENIED without prejudice and with leave to renew.

Dated: Central Islip, New York
November 20, 2023

**S O   O R D E R E D:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge